UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RONALD GALICIA,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT et al.,<br><br>Respondents. | Case No. 2:26-cv-03397-TMC<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION AND BACKGROUND

Petitioner Ronald Galicia is a Venezuelan citizen and asylum seeker who entered the United States in 2021 without admission or parole. Dkt. 9 ¶¶ 4–5, Dkt. 10 ¶ 2. On December 12, 2021, Mr. Galicia was apprehended and detained by a U.S. Customs and Border Protection officer. Dkt. 9 ¶ 6. Galicia was subsequently released on parole with Alternative to Detention ("ATD") requirements. *Id.* ¶ 6. According to a declaration from Deportation Officer Kurtis Reed, Galicia did not report as directed. *Id.* ¶ 7. Nearly three years later, in September 2024, Galicia was issued a Notice to Appear ("NTA"), charging him as subject to removal from the United States pursuant to sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") and placing him in removal proceedings. *Id.* ¶¶ 8–9. Although ICE issued a warrant for Galicia's arrest, he was not taken into custody. *Id.* ¶ 9.

Approximately two years later, on July 19, 2026, Galicia was encountered by ICE in state custody following arrest for Battery – Domestic Violence. Dkt. 9 ¶ 11. ICE issued a detainer to take Galicia into federal custody upon his release from jail and a new warrant for his arrest. *Id.* ¶¶ 11–12. A Florida state judge set an appearance bond for $1,100, which was posted by Galicia's spouse. Dkt. 10 ¶ 7. On July 21, 2026, Galicia was taken into ICE custody in Florida and subsequently transferred to the Norwest ICE Processing Center ("NWIPC"). *Id.* ¶ 8; Dkt. 9 ¶ 12–14.

On September 28, 2026, Galicia filed this petition for a writ of habeas corpus, arguing that Respondents violated his due process rights by detaining him without advance notice or an opportunity to be heard. Dkt. 3. On October 13, the government filed its return, arguing that Galicia is mandatorily detained under 8 U.S.C. § 1225(b) and, alternatively, that his detention comports with due process. Dkt. 8.

Galicia challenges the constitutionality of his detention after nearly five years of liberty. Dkt. 10 ¶ 2. The Court agrees that his procedural due process rights have been violated and concludes that this violation can be remedied by a post-deprivation hearing where the government must prove that his detention is justified by clear and convincing evidence. The Court therefore GRANTS Galicia's petition for writ of habeas corpus but DENIES the request for immediate release from custody.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

### A. Galicia is detained pursuant to 28 U.S.C. § 1226.

First, the parties dispute the statutory authority governing Galicia's detention. Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Dkt. 8 at 3–4. Galicia argues that as a noncitizen who was "present . . . in the interior of the country," he is subject to detention under 8 U.S.C. § 1226(a). Dkt. 3 at 13; Dkt. 10 at 1, 3. This Court has explained that noncitizens initially paroled into the United States who have been "present within the interior" for years following the expiration of parole are subject to detention under § 1226. *Juan Alexander Dominguez Rodriguez v. Warden*, No. 2:26-CV-02921-TMC, 2026 WL 3181243, at *2 (W.D. Wash. Oct. 23, 2026); *accord Sananes Hernandez v. Leyva*, No. 4:26-CV-00054-DN, 2026 WL 1948965, at *6 (D. Utah July 6, 2026) ("[E]ven if Mr. Sananes Hernandez's parole properly terminated on April 15, 2025, he was already present within the interior of the United States and continued to be present within the United States for approximately 13 months before ICE officers arrested him on May 14, 2026. That presence demands that Mr. Sananes Hernandez's detention be governed by § 1226(a)."); *see also id.* at *8 (stressing that the plain language of "forthwith" in 8 U.S.C. § 1182(d)(5)(A), requiring DHS to act "within a reasonable time under the circumstances of the case[, or] promptly and with reasonable dispatch" if DHS seeks to re-detain a noncitizen after their parole expires).

### B. Galicia is entitled to a bond hearing at which the government must prove by clear and convincing evidence that he is a danger or a flight risk.

Galicia argues that "continued detention without an individualized custody determination violates the due process [clause] of the Fifth Amenement." Dkt. 3 at 3. He seeks immediate release from custody or, in the alternative, a bond hearing where the government has the burden of proving dangerousness or flight risk by clear and convincing evidence. Dkt. 10 at 14.

The Court finds that Galicia's re-detention violated procedural due process. The government previously released Galicia on parole. Dkt. 9 ¶ 6. That parole was revoked in 2024 when the government issued an arrest warrant and NTA charging Galicia as removable based on alleged parole violations. *Id.* ¶ 8–9; 8 CFR 212.5(e)(2)(i). However, ICE took no steps to execute the warrant or otherwise take Galicia into custody until 2026. Dkt. 9 ¶ 11–13. During that time, Galicia continued to pursue his asylum claim, and his presence was well-known to the government. Noncitizens who have been released previously are entitled to due process protections before having their liberty revoked. *Caglar v. Wamsley*, No. 2:26-cv-00787-TMC, 2026 WL 1123515, at *3 (W.D. Wash. Apr. 24, 2026) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (probation)). However, in cases involving public safety allegations by a state agency, "a prompt post-arrest hearing at which the individual can contest his detention and at which the Government bears the burden of proving by clear and convincing evidence the individual's dangerousness or risk of flight based on changed circumstances" is sufficient. *Id.* (citation omitted) Similarly, the Court concludes that here, where ICE took custody of Galicia after he had been detained by local authorities for an alleged domestic assault, a post-arrest hearing is sufficient. *See id.*

Application of the three-part *Mathews* test confirms this result. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The first factor, "the private interest that will be affected by the official action" weighs in favor of Galicia. *Id.* "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Galicia established a life in Florida, is pursuing an asylum claim, and the government was aware of his presence for nearly two years after terminating his parole. Dkt. 9 ¶¶ 8–13; Dkt. 3 at 3.

The second factor, "risk of erroneous deprivation" also favors Galicia. The government did not provide any process for Galicia to challenge his re-detention. *Dominguez*, 2026 WL 3181243, at *3. Even if the government seeks to argue that Galicia's arrest for an alleged domestic assault constitutes a changed circumstance, Galicia must still be provided with an "opportunity to address the bases asserted for his re-detention." *Id.* (citation omitted).

The third factor, the government's interest, is mixed. The burden of a hearing is marginal compared to the cost of erroneously detaining someone who can be safely supervised on bond. "Incarcerating a person who does not pose a flight risk or danger to the community not only serves no purpose but undermines the Government's own interest in minimizing the fiscal and administrative effects of unnecessary incarceration and imposes societal costs by removing individuals from their families, communities, and jobs." *Id.* at *4 (citation omitted). But the Ninth Circuit has recognized the government's "obvious interest" in minimizing flight risk and protecting the public from noncitizens who may pose a risk to public safety. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2026). Where, as here, the government takes custody of a noncitizen for removal proceedings who was already detained by state officials based on an alleged public safety violation, that interest supports requiring only a prompt post-arrest hearing. *See O.F.C. v. Almodovar*, No. 25-CV-9816 (LJL), 2026 WL 74262, at *11 (S.D.N.Y. Jan. 9, 2026) ("[T]he Government might have an interest in temporarily holding an individual who has been convicted of a crime while on bond for a short period of time so that a neutral decisionmaker can confirm whether the individual constitutes a danger to the community.").

This Court concludes that "due process requires the Government to provide a prompt post-arrest hearing at which the individual can contest his detention and at which the Government bears the burden of proving by clear and convincing evidence the individual's dangerousness or risk of flight based on changed circumstances." *Caglar*, 2026 WL 1123515, at

*5 (quoting *O.F.C.*, 2026 WL 74262, at *12). While in initial bond hearings under § 1226(a) noncitizens must prove their entitlement to bond, this Court agrees with other district courts in this Circuit that, in the context of re-detention, the government must justify re-detention by clear and convincing evidence. "That burden shifting is logical even for a post-deprivation hearing . . . [T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing justification for the re-detention." *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).

## IV. CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART Galicia's petition for writ of habeas corpus. Dkt. 3. The Court ORDERS as follows:

1. Galicia's re-detention without a prompt post-arrest hearing and notice of said hearing violates the Due Process Clause of the Fifth Amendment.
2. Within 7 days of this Order, the interested non-party, the United States, must either release Galicia or provide him a bond hearing before an Immigration Judge at which the government bears the burden of proving by clear and convincing evidence his dangerousness or risk of flight based on changed circumstances.
3. If Galicia is released, Respondents must return to Galicia any personal property, including any personal identification document (other than a passport) and any employment authorization document.
4. Galicia's pending motion for appointment of counsel is denied as moot. Dkt. 4.

Dated this 10th day of November, 2026.

Tiffany M. Cartwright
United States District Judge